IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I.W., a minor, by and through his Parent, N.W. | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | No.: 14- 3141 |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, | : | |
| Defendant. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                      **January 13, 2016**

Plaintiff I.W., by and through his parent, N.W. (collectively "Plaintiffs") brings the above-captioned action against the School District of Philadelphia ("Defendant" or "the District") to recover attorneys' fees and costs under the Individuals with Disabilities Education Improvement Act ("IDEIA" or "the Act"). (Compl., ECF No. 1). Presently before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs, (Pls.' Mot., ECF No. 33); the District's response in opposition, (Def.'s Resp., ECF No. 36); and Plaintiffs' reply thereto, (Pls.' Reply, ECF No. 37). For the following reasons, Plaintiffs' motion for attorneys' fees and costs is **GRANTED IN PART**.[1]

## I.        BACKGROUND

The underlying case arises from administrative proceedings brought by I.W., a Philadelphia resident entitled to special education services due to Mixed Receptive-Expressive Language Disorder and related learning disabilities.. (Pls.' Mot. Ex. B ¶¶ 1, 21, ECF No. 33-2).

---

[1] The Honorable C. Darnell Jones II referred Plaintiffs' Motion to the undersigned for disposition. (Order, ECF No. 35).

I.W. received academic programming, including speech and language therapy, at the Main Line Academy in the mornings, and vocational education in carpentry at the Swenson School for the Arts and Technology in the afternoons.  (*Id.* ¶ 1).

On May 14, 2013, Plaintiffs filed an administrative due process complaint alleging that Defendant violated the IDEIA by denying I.W. a free appropriate public education ("FAPE") designed to meet his unique educational needs.[2]  (*See id.*).  As summarized by the Hearing Officer, the due process complaint raised the following seven issues: (1) the District denied I.W. a FAPE by failing to implement an appropriate individualized education plan ("IEP") and failing to provide Extended School Year ("ESY") programming in 2012;[3] (2) the District failed to timely reevaluate I.W. and should compensate Plaintiffs for an independent neuropsychological evaluation they obtained in September 2013; (3) the District failed to comply with the *LeGare* consent decree in developing a high school placement for I.W., (4) the District discriminated against I.W. on the basis of his disability by failing to provide I.W. with opportunities to participate in extracurricular activities; namely, high school level sports teams; (5) the District should be required to develop an appropriate education for I.W. at one educational facility; (6) the District should be required to provide I.W. with compensatory education; and (7) the District failed to appropriately accommodate N.W., who also has dyslexia, in IEP meetings and other matters related to I.W.'s education.  (Pls.' Mot. Ex. A ¶¶ 1-7, ECF No. 33-1).

---

[2]  The Individuals with Disabilities Education Act ("IDEA") was amended and renamed to the IDEIA, effective July 1, 2005.  *See* Pub.L. No. 108–446, 118 Stat. 2715 (2004).  This Court will refer to this Act as the IDEIA throughout this Memorandum Opinion.

[3]  The Hearing Officer noted that Plaintiffs' claim that the District denied I.W. a FAPE also include allegations that the District failed to provide an appropriate educational placement at a single location; sufficient services to meet I.W.'s needs, including transportation, speech and language counseling, access to assistive technology, and specially-designed services; and appropriate transition services to meet I.W.'s employment goal.  (Pls.' Mot. Ex. B ¶ 1).

On May 29, 2013, the parties reached agreement to resolve the ESY issue. (*Id.* at 2). As part of the Settlement Agreement, the District agreed to pay Plaintiffs' reasonable attorneys' fees and costs associated with that claim.[4] (*Id.*; Pls.' Mot. Ex. C at 3, ECF No. 33-3).

Over the course of nine due process hearings held between August 26, 2013, and January 28, 2014, the parties tried the remaining issues. (Pls.' Mot. 6). On March 13, 2014, the Hearing Officer issued a written opinion finding in favor of Plaintiffs on two of seven claims. Specifically, she determined that the District did not provide a FAPE to I.W. because it failed to ensure I.W.'s significant language disability was addressed after it was identified in 2008, and because it failed to proactively propose changes to I.W.'s educational program to meet his needs. (Pls.' Mot. 7-8; Pls.' Ex. A 19-21). The Hearing Officer did not afford relief on Plaintiffs' claims that the District violated the *LeGare* Consent Decree, violated N.W.'s rights, or failed to provide appropriate transition services, (*Id.* at 18, 21), and did not address the denial of opportunity to participate in extracurricular activities or the right to be educated at a single location.

Defendant was ordered to conduct a comprehensive evaluation by a speech and language pathologist; to reimburse Plaintiffs for the cost of the professional independent educational evaluation ("IEE") they obtained; to prospectively provide I.W. with intensive one-to-one or small group instruction in reading, writing, and math based on Orton-Gillingham principles;[5] and to provide I.W. with compensatory instruction in reading, writing and/or math for every day that

---

[4] To date, those costs have not been paid. (Pls.' Mot. 6 n.1). They are included in the present pending motion.

[5] Main Line Academy used the Scottish Rite Dyslexia Training Program for group reading instruction. (Pls.' Mot. Ex. A ¶ 13). The Hearing Officer found Orton-Gillingham principles to be "research based and effective for high school students with reading disabilities." (*Id.* ¶ 14).

school was in session from two years prior to the administrative complaint until the last full day

I.W. attended private school, (Pls.' Mot. Ex. A 23-24), amounting to approximately 1300 hours

of compensatory education, (Pls.' Mot. 6)

Having prevailed in the due process hearings, Plaintiffs submitted attorney time sheets to

Defendant on April 10, 2014, seeking attorneys' fees and costs in connection with those

proceedings.  (Pls.' Mot. 10; Pl.'s Mot. Ex. D, ECF No. 33-4).  The District did not respond or

otherwise offer to pay any amount of attorneys' fees or costs.  (Pl.'s Mot. 10).

On June 3, 2014, Plaintiffs initiated the pending federal action to recover their fees and

costs pursuant to 20 U.S.C. § 1415(i)(2)(B).  (Pls.' Mot. 10; Compl, ECF No. 1).  The parties

agreed to participate in the Court's arbitration program, waiving the $150,000 cap typically

imposed on awards.  (Pls.' Mot. 10).  On October 15, 2014, three court-appointed arbitrators

entered judgment in Plaintiffs' favor.  (*Id.* at 11).  On October 29, 2014, Plaintiffs filed a motion

seeking an award of attorneys' fees associated with the federal action, up to and including the

arbitration.  (Pls.' Mot., ECF No. 18).  On November 4, 2014, the School District demanded trial

*de novo*.  (ECF No. 19).  As a result, Plaintiffs withdrew their fee motion.  (ECF No. 20).

Thereafter, the parties unsuccessfully attempted to settle this matter.  (Minute Entry, ECF No.

31).  Following the settlement conference, and in accordance with the Court's Order, (ECF No.

32), Plaintiffs renewed their motion for attorneys' fees and costs on August 24, 2015.  (Pls.'

Mot., ECF No. 33).

In the administrative proceedings, Plaintiffs were represented by Sonja D. Kerr, Esq.

("Attorney Kerr"), Director of Disability Rights Law at the Public Interest Law Center of

Philadelphia ("PILCOP") and Benjamin J. Hinerfeld, Esq. ("Attorney Hinerfeld"), the principal

attorney at the Law Office of Benjamin J. Hinerfeld.  Neither Attorney Kerr nor Attorney

4

Hinerfeld charged Plaintiffs for their services; rather, Plaintiffs signed retainer agreements assigning the amount of any attorney's fees awarded to counsel. (Resp. Ex. 19 ¶¶ 7-9, ECF No. 36-1; Resp. Ex. 20 ¶¶ 7-10, ECF No. 36-1). To assist in the federal civil action, Plaintiffs retained Molly E. Flynn, Esq. ("Attorney Flynn"), a senior associate at Drinker Biddle & Reath LLP. (Pls.' Mot. 17).

The matter has been fully briefed and is ripe for disposition.[6] In sum, Plaintiffs seek reimbursement for $505.10 in costs and $267,129.50 in attorney's fees, as follows:

|  | Administrative Proceedings | Federal Proceedings | Total |
|---|---|---|---|
| Attorney Kerr | $85,980 ($600/hour x 143.3 hours) | $14,340 ($600/hour x 23.9 hours ) $450 (4.5 hours x $100/hour)[7] | $100,770 |
| Attorney Hinerfeld | $111,810 ($300/hour x 372.7 hours) | $12,180 ($300/hour x 40.6 hours) | $123,990 |
| Attorney Flynn | N/A | $42,379.5 (148.7 hours x $285/hour) | $42,379.5 |
| | | | **TOTAL: $267,139.50** |

## II.    LEGAL STANDARD

The IDEIA provides a fee-shifting mechanism in which the prevailing party is entitled to recover reasonable attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B). "[P]arties are considered prevailing parties if 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *J.O. ex rel. C.O. v. Orange*

---

[6] The Court has considered the parties' submissions and decides this matter without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7.1(i).

[7] As discussed in greater detail below, Attorney Kerr's requested rate for substantive work is $600 per hour. She has billed at $100 per hour for her time on discrete tasks that could have been performed by a paralegal.

*Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).[8]

The court assesses the reasonableness of the requested attorney's fees by applying the lodestar formula, which multiplies the number of hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). It is initially the burden of the prevailing to party to demonstrate the reasonableness of the claimed rate and the hours spent. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Shanea S. v. Sch. Dist. of Phila.*, No. 12-1056, 2014 WL 2586940, at *1 (E.D. Pa. June 10, 2014). The burden then shifts to the party opposing the fee request to make specific objections to the proposed hours and rate. *Rode*, 892 F.2d at 1183. In considering objections, the court has significant discretion to adjust the fees and costs downwards. *Id.* However, the court cannot decrease the award *sua sponte. Jackson Hewitt Inc. v. Nat'l Tax Network, LLC*, No. 10-5912, 2015 WL 5770089, at *4 (D.N.J. Sept. 29, 2015) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir .2005) ("The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party.")).

The resulting lodestar is presumed reasonable. *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)). Nevertheless, the Court has a "positive and affirmative function in the fee fixing process" and should exercise its discretion to exclude unreasonable hourly rates and hours in light of the results obtained. *Maldonado*, 256 F.3d at 184 *see also Elizabeth S. v. Sch. Dist. of Philadelphia*, No. 11-1570, 2012 WL 2469547, at *2 (E.D. Pa. June 28, 2012) ("[O]nce the

---

[8] While the *Hensley* case concerned attorneys' fees under 42 U.S.C. § 1988, the Court made clear the standards for interpreting the fee-shifting provision of 42 U.S.C. § 1988 are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7.

lodestar has been calculated, the court may adjust it downward in light of the results obtained.")
(citing *Hensley,* 461 U.S. at 434-37).

### III.      CALCULATION OF REASONABLE ATTORNEY'S FEES

Defendant does not dispute that Plaintiffs are a prevailing party and may seek reasonable
attorneys' fees and costs pursuant to the IDEIA.  (Pls.' Mot. 12; Def.'s Resp. 2).  However,
Defendant argues that: (A) the Court should decline to award any attorneys' fees or costs
because Plaintiffs' counsel obtained a proprietary interest in Plaintiffs' right to recover attorneys'
fees, which constitutes a conflict of interest in violation of the Pennsylvania Rules of
Professional Conduct; (B) counsels' requested hourly rates are unreasonable; (C) counsels'
requested hours are excessive and/or duplicative; (D) the lodestar should be reduced because
counsel was only partially successful in the administrative hearing, in that they succeeded on
only two of their seven due process claims.

Having considered these arguments, I will not deny Plaintiffs' request for fees on the
basis of an alleged conflict of interest arising from the retainer agreements.  Considering the
reasonableness of the rates and hours requested, I find certain reductions to be appropriate.
Moreover, I will impose a 30% reduction on the resulting lodestar to reflect the degree of success
obtained in the administrative proceedings.

#### A.      There is no Conflict of Interest Preventing a Fee Award

Defendant contends that Attorneys Kerr and Hinerfeld are precluded from obtaining a
discretionary award of attorneys' fees because the retainer agreements they entered into with
Plaintiffs violated Pennsylvania Rule of Professional Conduct 1.8(i), which prohibits an attorney
from acquiring a proprietary interest in the subject matter of the litigation.  (Resp. 8-10).  In

7

relevant part, the retainer agreement entered into between Plaintiffs and PILCOP contain the

following language:

> 7.     The Law Center will not charge client any fee for attorney services.

> 8.     Client agrees that the Law Center may seek reimbursement of attorneys' fees and costs from the Defendant(s) or from any recovery obtained through settlement. Client authorizes the Law Center to seek to recovery of attorney's fees and costs from the Defendant(s), including, if necessary, to apply for a fee award on the Client's behalf.

> 9.     By signing this agreement, Client Assigns Client's claim for attorney's fees and costs to the Law Center. Client authorizes the Law Center to accept and keep any attorney's fees and/or costs awarded by a court or paid by Defendant(s) in settlement . . . .

(Resp. Ex. 19 ¶¶ 7-9).[9]  Plaintiffs reply that the assignment of rights to recover statutory

attorneys' fees is proper and enforceable under the exceptions to Rule 1.8(i) and the Restatement

of the Laws Governing Lawyers.  (Pls.' Reply, 1-2).  They further note that even if the retainer

agreements violated the Rules of Professional Conduct, this would not necessarily be a basis to

preclude an award of fees.  (*Id.* 2 n.1).  I conclude that the retainer agreements in this case do not

create a conflict of interest in violation of Rule 1.8(i), and I find no legal reason to prohibit an

award of attorneys' and costs on this basis.

Pennsylvania Rule of Professional Conduct 1.8(i) provides that "[a] lawyer shall not

acquire a proprietary interest in a cause of action that the lawyer is conducting for a client[.]"  Pa.

R. Prof'l Conduct 1.8(i).  However, by its plain terms, Rule 1.8(i) creates two exceptions: "the

lawyer may: (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and (2)

---

[9]  The retainer agreement entered into between Plaintiffs and Attorney Hinerfeld contains virtually identical language.  (Resp. Ex. 20 ¶¶ 7-10).

contract with a client for a reasonable contingent fee in a civil case." *Id.* The comment to this Rule explains that "liens granted by statute, liens originating in common law, and liens acquired by contract with the client" are liens authorized by law. *Id.* Cmt. 16. Further, the Restatement (Third) of the Law Governing Lawyers § 38 specifically addresses client-lawyer fee contracts in cases involving fee shifting statutes such as the IDEIA. Comment *f* to § 38 explains that, under a fee shifting statute, "the fee award would go to the lawyer rather than the client *if the parties had reached an enforceable contract so providing*[.]" *Id.* (emphasis added).

I find no merit to the District's argument that the retainer agreements in this case violated Rule 1.8. In general, Pennsylvania "permits assignment of claims for attorneys' fees so long as there is a clear agreement to do so between the parties to the assignment." *Philadelphia Prof'l Collections, LLC v. Young*, No. 10-00724, 2010 WL 5257651, at *8 (E.D. Pa. Dec. 22, 2010). Moreover, Courts within this Circuit have found retainer agreements in IDEIA cases assigning a plaintiff's right to attorneys' fees to be permissible. *See Charles O. v. Sch. Dist. of Philadelphia*, No. 13-0512, 2014 WL 4794993, at *1 n.3 (E.D. Pa. Sept. 26, 2014) (representation agreements assigning the right to attorney's fees awarded by a court or by virtue of settlement have been "deemed valid") (citing *Pub. Interest Law Ctr. of Phila. v. Pocono Mountain Sch. Dist.*, No. 09–2326, 2010 WL 1024735, at *3 (M.D. Pa. Mar.17, 2010) (finding that a client's express assignment of attorneys' fees to plaintiff legal services organization is insufficient grounds to dismiss a claim for attorneys' fees)). Furthermore, even if the retainer agreements in this case were in violation of the Pennsylvania Rules of Professional Conduct, this would not necessarily preclude an award of fees altogether. *See Maritrans GP, Inc.v. Pepper Hamilton & Scheetz*, 602 A.2d 1277, 1279, 1284 (Pa. 1992) (cautioning that violations of the Rules of Professional Conduct do not *per se* render that misconduct actionable).

9

I also conclude that the assignment of fees and costs is consistent with public policy.  In *Hensley*, the Supreme Court explained that the purpose behind fee-shifting provisions in civil rights statutes is to ensure that citizens with little or no money are able to hire a lawyer to vindicate important public rights.  *See Hensley*, 461 U.S. at 445 (citing H.R. Rep. No. 94-1558, pp. 1-3).  In this case, Attorneys Kerr and Hinerfeld represented Plaintiffs *pro bono* in the administrative proceedings, with the express understanding that should they prevail, they would have the right to pursue reasonable fees and costs from the District.  The assignment of Plaintiffs' interest in a fee award to counsel in the retainer agreement furthers the purpose of the Act.

Therefore, I will not preclude Plaintiffs' counsel from obtaining an award of fees and costs on the basis that their retainer agreements were unenforceable pursuant to the Pennsylvania Rules of Professional Conduct.

### B.      Reasonable Hourly Rates

In calculating the lodestar, I first examine the reasonableness of counsel's respective hourly billing rates.  Plaintiffs request $600 per hour for Attorney Kerr; $300 per hour for Attorney Hinerfeld; and $285 per hour for Attorney Flynn.  (Pls.' Mot. 15-17).

The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 413 (3d Cir. 2013).  To determine the prevailing market rate, "a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  The starting point is typically the hourly rate charged by the attorney, but this rate is not dispositive of what is

a reasonable rate.  *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

The prevailing party bears the burden of establishing counsel's reasonable rate.  *Id.* at 1185.  Attorneys may not rest on their own affidavits to support a claimed rate; rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community.  *See Rode*, 892 F.2d at 1183.

> Where the fee movant has no customary rate and will not be charging the movant any fee, the prevailing market rate can be established from several sources, including: (1) affidavits of counsel with similar experience as to what they would charge for a similar case; (2) bar surveys of customary rates; (3) the amount charged by counsel for the opposition in the particular case or similar litigation; (4) the amounts awarded counsel with similar experience in similar litigation; and (5) the amounts awarded for the services of counsel in prior litigation.

*Id.* (quoting 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 54. 190 (3d ed. 2009)).  Once the prevailing party has established its prima facie case, the burden shifts to the other party to submit rebuttal evidence to contest the reasonableness of the claimed rate.  *Evans*, 273 F.3d at 361.

In support of the requested hourly rates, Plaintiffs have submitted affidavits from Attorney Kerr, (Pls.' Mot. Ex. D, ECF No. 33-4) [hereinafter, "Kerr Decl."]; Attorney Hinerfeld, (Pls.' Mot. Ex. K, ECF No. 33-11) [hereinafter, "Hinerfeld Decl."]; and Attorney Flynn, (Pls.' Mot. Ex. F, ECF No. 33-6) [hereinafter, "Flynn Decl."].  Plaintiffs have also provided the Community Legal Services Fee Schedule effective September 2014 ("2014 CLS Fee Schedule"), (Pls.' Mot. Ex. G, ECF No. 33-7); the PILCOP Fee Schedule effective October 2014 ("2014 PILCOP Fee Schedule"), (Pls.' Mot. Ex. I, ECF No. 33-9); and an affidavit from Jennifer C.

Clarke, Esq., the Executive Director of PILCOP, averring that $600 per hour is a reasonable rate for Attorney Kerr, (Pls.' Mot. Ex. J, ECF No. 33-10).

The School District raises three general objections to the requested hourly rates. I will address these general objections first, and then consider whether the rate requested by each attorney is reasonable.

### 1.    General Objections

The District argues that the affidavits of Attorneys Kerr, Hinerfeld and Flynn should be precluded; that the Court should employ rates consistent with the 2011 CLS Fee Schedule, not the 2014 CLS Fee Schedule; and that Attorneys Kerr and Hinerfeld are judicially estopped from claiming higher rates than those they sought in their fee demand from the District in April 2014. For the reasons set forth below, I find none of these arguments to be persuasive.

### a.    Whether Affidavits Should be Precluded

First, Defendant contends that the affidavits of Attorneys Kerr, Hinerfeld, and Flynn are inadmissible for the purpose of establishing the reasonableness of their requested hourly rates because "plaintiffs' attorneys themselves are incompetent to testify about the prevailing rates in the community."  (Def.'s Resp. 11-12).  The District cites to *Blum v. Stenson,* 465 U.S. 886 (1984), and *Holmes v. Millcreek Twp. Sch. Dist.,* 205 F.3d 583 (3d Cir. 2000).  (*Id.*)  In *Blum,* the Supreme Court acknowledged the difficulty of determining an appropriate "market rate" for attorneys' fees.  465 U.S. at 895-96 n. 11.  It clarified that fee applicants have the burden of establishing reasonableness and that evidence "in addition to the attorney's own affidavits" should be considered.  *Id.  Holmes* stands for the same principle that "[a]n attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits."  205 F.3d at 595.

Thus, neither case cited by Defendant prohibits the Court from considering a fee applicant's affidavit along with other evidence submitted in support of the requested hourly rate.

In this case, Plaintiffs have provided other competent evidence of the prevailing market rates in the community, including the CLS and PILCOP Fee Schedules. *See Maldonado*, 256 F.3d at 187 (describing CLS fee schedule with approval); *Bjorklund v. Phila. Hous. Auth.*,118 F. App'x 624, 627 (3d Cir. 2004) (affirming award of fees in part because sample fee schedules, including the CLS fee schedule, supported the hourly rates awarded); *Davis v. Riddle & Assocs.*, P.C., 579 F. Supp. 2d 692, 694 (E.D. Pa. 2008) (noting that while the CLS schedule "is a useful starting point, [it] is not the exclusive tool to determine appropriate fees in the presence of other evidence.").  Further, Plaintiffs have also submitted the Affidavit of Attorney Clarke, which addresses the reasonableness of the fee requested by Attorney Kerr.

Accordingly, this Court reviews in full the declaration and affidavits of Attorneys Kerr, Hinerfeld, and Flynn, as well as other affidavits and evidence submitted to establish the reasonableness of their requested fees.

**b.       Whether 2011 Fee Schedules Should be Referenced**

Next, the District argues that — although the CLS Fee Schedule is a fair measure of reasonable hourly rates in the greater Philadelphia area — the Court should employ rates consistent with the 2011 CLS Fee Schedule, not the 2014 CLS Fee Schedule.  (Def.'s Resp. 5-8). In support of this contention, the District argues that because the underlying federal action was filed only to recover attorneys' fees and costs, the complaint of August 2014 is the relevant fee petition.  (*Id*. at 5-6).  Since the 2014 CLS and PILCOP fee schedules were not yet in effect at

the time of the Complaint was filed, [10] the District urges the Court to assess the reasonableness of

counsels' rates using prior versions of those fee schedules.  (*Id.*).  Plaintiffs respond that the fee

petition was filed on August 24, 2015, when they filed the Motion for Attorneys' Fees and Costs;

thus, the 2014 CLS and PILCOP fee schedules are the best evidence of prevailing market rates.

(Pls.' Mot.13-14).  I agree with Plaintiffs.

When calculating the amount of attorneys' fees to be awarded under a fee-shifting statute,

the district courts must use the current market rate.  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d

Cir. 2001) (citing *Rode*, 892 F.2d at 1183).  The Third Circuit has held that the "current market

rate is the rate *at the time of the fee petition*, not the rate at the time the services were

performed."  *Id.* at 149-50 (emphasis added).  The purpose behind using the market rate at the

time of the fee petition is to compensate the prevailing party for any delay in reimbursement.  *Id.*

(citing *Rode*, 892 F.2d at 1188-89) (describing petition based on current rates as premised on a

theory of "delay compensation").

Defendant's argument — that the federal complaint constitutes the fee petition because

the complaint was brought solely to recover attorneys' fees and costs — has been rejected by

another Court in this District under nearly identical facts.  In *Ryan P.*, the parents of an IDEIA-

eligible student initiated due process administrative proceedings to rectify alleged educational

inadequacies.  2008 WL 724604, at *1.  Following an Appeals Panel decision in favor of the

student, the parents sought reimbursement for counsel fees incurred throughout the

administrative appeals process.  *Id.*  As a result of the School District's alleged failure to

respond, the parents filed a federal action in 2007 to recover attorneys' fees and costs.  In 2008,

---

[10]  The 2014 CLS Fee Schedule became effective on September 12, 2014.  (Pls.' Mot. Ex.
G, ECF No. 33-7).  The 2014 PILCOP fee schedule became effective on October 1, 2014.  (*Id.*
Ex. I, ECF No. 33-9).

the parents filed a motion for attorneys' fees and costs, requesting the hourly rates provided by

the 2008 CLS Fee Schedule for the time recorded by counsel in both the administrative hearing,

and the federal litigation.  *Id.*  Rejecting the School District's argument that the 2007 federal

complaint constituted the fee petition, the Court in *Ryan P.* reasoned that deeming the parents'

2008 motion to be the fee petition was more consistent with the stated purpose of the rule in

*Lanni*, since it would better compensate the prevailing parents for the delay caused by the

litigation of the fee issue.  *Id.*  Accordingly, the Court in *Ryan P.* used the 2008 CLS fee

schedule.

Defendant states in a conclusory fashion that *Ryan P.* was "wrongly decided," (Resp. 6

n.3), but I do not agree.[11]  The case is highly instructive, and the facts in this case are similar to

those before the Court in *Ryan P.*  Here, as in *Ryan P.*, the District did not respond to Plaintiffs'

original request for attorneys' fees and costs following the administrative proceedings, giving

rise to the need for federal litigation.  Once Plaintiffs filed their federal complaint to recover

attorneys' fees and costs, the parties participated in this District's arbitration program.  The

arbitrators returned a verdict for Plaintiffs, who then filed a motion for fees and costs.  (Pls.'

Mot., ECF No. 18).  They subsequently withdrew this motion because Defendant demanded trial

de novo.  (ECF Nos. 19, 20).  After the parties unsuccessfully attempted to settle this dispute, the

Court ordered Plaintiffs to resubmit the pending fee petition.  (Order, ECF No. 28).  To

---

[11]  Defendant cites two cases in support of its position that the federal complaint should
constitute the fee petition: *M.M. v. School District of Philadelphia*, No. 11-4482, 2012 U.S. Dist.
LEXIS 85640 (E.D. Pa. March 27, 2012) and *Mary Courtney T. v. School District of
Philadelphia*, No. 06-2278, 2009 WL 185426 (E.D. Pa. Jan 22, 2009).  (Resp. 5-6).  Though both
decisions cite to *Lanni*, neither of these cases addresses the issue here: whether the filing a
federal complaint for attorneys' fees constitutes a fee petition such that the Court should look to
the prevailing market rates at the time of the complaint.  By contrast, *Ryan P.* addressed this
issue directly and is consistent with the Third Circuit's reasoning in *Lanni*.

compensate Plaintiffs for the delay in reimbursement caused by the extensive litigation of the fee

issue, the August 2015 motion for attorney's fees and costs is the fee petition.

Accordingly, I will consider the 2014 CLS and PILCOP fee schedules to determine

whether the rates requested by counsel in this action are reasonable.[12]  *See, e.g.*, *M.M. & E.M.,*

*individually & on behalf of S.M. v. The School District of Philadelphia*, No. 14-6061, 2015 WL

6689855, at *6, *6 n.2 (E.D. Pa. Nov. 3, 2015) (relying on the 2014 CLS Fee Schedule proffered

by the plaintiffs, rather than the 2011 fees schedule proffered by the District, but explaining that

the fee schedule "will not be the exclusive tool relied upon by the court."); *see also Lehman*

*Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Servs., L.P.*, No. 11-6089, 2015

WL 6378581, at *8 (E.D. Pa. Oct. 22, 2015) (applying 2014 CLS Fee Schedule rates in contract

case).

### c.      Whether Counsel is Judicially Estopped from Higher Rates

Defendant's last general objection to the hourly rates requested is that Plaintiffs are

judicially estopped from claiming rates higher than $450 per hour for Attorney Kerr and $250

per hour for Attorney Hinerfeld —the rates requested in April 2014 after the administrative

proceedings.  (Def.'s Resp. 16-17).  This argument is without merit.  The Third Circuit Court of

Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that
> are irreconcilably inconsistent.  Second, judicial estoppel is

---

[12]  Reliance on the CLS on the figures is appropriate where, as here, the non-prevailing party does not object or where there the parties supply little other evidence as to the reasonableness of the rates requested.  *See, e.g., Damian J. v. Sch. Dist. of Philadelphia*, No. 06–3866, 2008 WL 1815302, at *2 n.7 (E.D. Pa. Apr. 22, 2008), *aff'd*, 358 F. App'x 333 (3d Cir.2009) (collecting cases).  In this case, reliance on the CLS fee schedule is appropriate because Defendant has not objected to the use of the CLS fee schedule overall, but merely to the use of the 2014 version.  *See Einhorn v. Dimedio Lime Co.*, No. 13-3634, 2015 WL 5920911, at *2 (D.N.J. Oct. 9, 2015) ("Because Defendant has not objected to Plaintiff's use of the CLS survey, the Court finds its use is appropriate in this matter.").

> unwarranted unless the party changed his or her position "in bad
> faith - i.e., with intent to play fast and loose with the court."
> Finally, a district court may not employ judicial estoppel unless it
> is "tailored to address the harm identified" and no lesser sanction
> would adequately remedy the damage done by the litigant's
> misconduct.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp*., 337 F.3d 314, 319-20 (3d

Cir. 2003) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80

(3d Cir. 2001)).  Defendant has made no showing and offered no argument as to how Plaintiffs'

conduct satisfies this three-part test.  Plaintiffs are not judicially estopped from seeking different

hourly rates than those requested at other points in their ongoing quest to recover attorneys' fees

and costs.

Having addressed Defendant's general objections, I turn to consideration of the

reasonableness of the rates requested by each attorney representing Plaintiffs in this case.

## 2.  Attorney Kerr

Attorney Kerr requests compensation at a rate of $600 per hour.  Defendant argues that

Attorney Kerr should be compensated at no more than $400 per hour.  (Resp. 13-14).  In support

of this argument, the District relies on the 2011 CLS Fee Schedule, (*id.* at 14), which this Court

has already explained is not applicable to the pending motion.  The District also provides the

expert report and resume of Michael I. Levin, Esq.  (Def.'s Resp. 13; Resp. Ex. 1, ECF No. 36-1)

[herineafter, "Levin Report"].  Attorney Levin has nearly forty years' experience in representing

school districts in Pennsylvania special education cases and charges his district clients $190 per

hour.  (Levin Report 1).  Based on his experience, he contends that even skilled and veteran

attorneys representing parents in special education cases "charge in the range of $350/hour to

$425/hour."  (*Id.* at 4).  Attorney Levin states that he is unaware of any other attorney in the field

of special education in Pennsylvania who bills at $600 per hour, or any case awarding $600 per

hour to a prevailing party's attorney in a special education case.  (*Id.*).

This Court is not persuaded by Defendant's argument,[13] and finds that Attorney Kerr's

rate of $600 is reasonable.  In support of her requested rate, Attorney Kerr explains that she has

been an attorney for approximately twenty-seven years and has focused exclusively on special

education law on behalf of children with disabilities for the entirety of that period.  (Kerr Aff. ¶¶

6-14).  She is the founder of Counsel of Parent Attorneys and Advocates, a national organization

for attorneys who represent parents in special education proceedings; has presented at numerous

national conferences related to special education law; and has published books and articles in the

field.  (*Id.* ¶¶ 9, 14-16).  Attorney Kerr's current hourly rate is on the lowest end of the 2014

PILCOP fee schedule and the 2014 CLS fee schedule for attorneys with similar experience, as

they indicate that attorneys with twenty-five years or more experience commonly charge

between $600 and $650 per hour.  (*Id.* ¶ 17; Pls.' Ex. I).

---

[13]  Plaintiffs argue that Defendant's designation of Attorney Levin as an expert on
attorneys' fees is untimely and prejudicial. (Pls.' Reply 4-5, 5 n.2).  I agree.  Discovery in this
matter was to be concluded by September 2014.  (Order, ECF No. 11).  Defendant did not
designate Attorney Levin as an expert in accordance with the scheduling order, or petition the
Court to amend the scheduling order pursuant to Federal Rule of Civil Procedure 16 to do so.
Rather, the District waited until September 30, 2015 to identify Attorney Levin as an expert,
when it produced his report as an exhibit to its response in opposition to Plaintiffs' fee motion.
Plaintiffs were undoubtedly prejudiced by this late disclosure, as they were denied the
opportunity to obtain their own expert and to explore, through expert discovery, the reliability of
Attorney Levin's methodology for assessing prevailing market rates.  Accordingly, I do not
consider Attorney Levin's expert report.  This is of little importance, as the Court is itself an
expert with respect to attorneys' fees.  *See Hall v. Borough of Roselle*, 747 F.2d 838, 841 (3d Cir.
1984) ("A judge is presumed knowledgeable as to the fees charged by attorneys in general and as
to the quality of legal work presented to him by particular attorneys; these presumptions obviate
the need for expert testimony such as might establish the value of services rendered by doctors or
engineers.") (quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary
Corp.*, 487 F.2d 161, 169 (3d Cir. 1973)).

As additional support, Attorney Kerr has submitted a declaration from Attorney Clarke, the director of PILCOP.  Attorney Clarke is a seasoned litigator who is admitted to practice in this District, attests that she is familiar with Attorney Kerr and her work as an education rights litigator, and avers that $600 is a reasonable hourly rate for an attorney with Attorney Kerr's experience practicing in the Eastern District of Pennsylvania.  (Clarke Decl.¶¶ 11-12).  She further explained she devised the 2014 PILCOP fee schedule by reviewing market rates for comparable work within the Philadelphia area, and that Attorney Kerr's rate was consistent with the rates charged by attorneys' with twenty-five or more years' experience.  (*Id.* ¶¶ 8).

Considering these factors, I find Attorney Kerr's requested rate of $600 per hour to be reasonable in light of her twenty-seven years' experience as a special education litigator, substantial expertise and thought leadership in the field, and the current market rates established by the 2014 CLS and PILCOP fee schedules.  *See, e.g. Lehman Bros. Holdings*, 2015 WL 6378581, at *8 n.7 (approving rate of $650 for attorney in private practice with twenty-five years' experience and demonstrated specialization in appellate litigation).

### 3.      Attorney Hinerfeld

Attorney Hinerfeld requests $300 as his billable hourly rate.  (Pls.' Br. 16).  Attorney Hinerfeld has fourteen years of civil litigation experience, focusing primarily on complex commercial and securities litigation.  (Hinerfeld Aff. ¶¶ 3, 5).  With the exception of one *pro bono* representation in 2009, (*id.* ¶ 6), Attorney Hinerfeld did not begin routinely practicing in the area of education law until March 2013, (*id.* ¶ 8).  In March 2013, Attorney Hinerfeld opened a law practice in Philadelphia, with a primary focus of representing children with special needs.  (*Id.*).  He also joined Freeman Corolla Reisman & Gran, LLP, as an associate.  (*Id.* ¶ 9).

Since January 2014, Attorney Hinerfeld has served as of counsel for Gina DeCrescenzo P.C., a law firm in White Plains, New York that specializes in special education litigation. (*Id.* ¶ 10). In that capacity, he has represented plaintiffs in approximately one dozen special education cases in New York state, including litigating appeals to the United States District Courts for the Northern and Southern Districts of New York. (*Id.*). Attorney Hinerfeld avers that the DeCrescenzo firm regularly bills clients $375 per hour for his New York legal work. (*Id.*).

Plaintiffs have not submitted any affidavits from local practitioners relating to the reasonableness of Attorney Hinerfeld's requested rate; however, they argue that $300 per hour is less than the $350 to $420 per hour provided in the 2014 CLS Fee Schedule for attorneys with eleven to fifteen years' experience. (Pls.' Mot. 17). Defendant contends that Attorney Hinerfeld's reasonable hourly rate in this case is no more than $250 per hour. (Resp. 14-15). In support of this argument, Defendant relies on Attorney Hinerfeld's original engagement letter in this case, which states that Attorney Hinerfeld's "ordinary billable market rate" was $250 per hour as of April 12, 2013. (*Id.* at 15). Defendant also points out that Attorney Hinerfeld is relatively inexperienced in special education law, as he only began to work consistently in this area in 2013. (*Id.*).

Defendant's argument that the Court should rely on the rate set forth in the engagement letter is unpersuasive. Considering a similar argument, a Court in this District recently explained, that "counsels' hourly rates are not limited by rates specified in engagement letters; a fee agreement does not impose an automatic ceiling on an award of attorney fees." *M.M. & E.M.*, 2015 WL 6689855, at *5 (citing *Steward v. Sears, Roebuck & Co.*, 2008 WL 189995, at *3 (E.D. Pa. Apr. 29, 2008) (refusing to charge 2008 hourly rate for services performed in 2001-2006 where rate increase was due only to passage of time)). The Court in *M.M.* found that rates

set forth in an engagement letter "are evidence of the prevailing rates" at the time of the letter, which may or may not be probative of a reasonable rate at the time of the fee petition. *Id.* In this case, the engagement letter indicates that Attorney Hinerfeld routinely charged $250 per hour in April 2013. As of the fee petition in August 2015, Attorney Hinerfeld's rate had increased by $50, or twenty percent. However, Attorney Hinerfeld indicates that through his private practice and work with the Freeman and DeCresenzo firms, he represented more than fifty families in special education proceedings between 2013 and 2015. (Hinerfeld Decl. ¶ 11). Accordingly, I do not find his fee increase to be unreasonable, and I will not reduce his rate based on his 2013 rates.

However, as the District notes, it is clear that Attorney Hinerfeld only began to practice in the field of special education litigation in 2013. Although Attorney Hinerfeld attests that he has represented many parties in special education proceedings since then, he does not point to any case in any jurisdiction in which he has been awarded a rate of $300 per hour, and the Court's efforts to locate such authority have not been fruitful. Considering these factors, $250 per hour — the top end of the CLS range for attorneys with two-to-five years' experience — is a reasonable hourly rate for Attorney Hinerfeld in this matter. *See, e.g.*, *E.C. v. Sch. Dist. of Philadelphia*, 91 F. Supp. 3d 598, 606 (E.D. Pa. 2015) (reducing hourly rate to $245 where experienced attorney had only been practicing in field of special education law for two years), *appeal docketed*, Case No. 15-1825 (April 6, 2015); *Charles O. v. Sch. Dist. of Philadelphia*, No. 13-0512, 2014 WL 4794993, at *4 (E.D. Pa. Sept. 26, 2014) (awarding $255 per hour for attorney with more than ten years' experience in housing, family and public benefits law, where it was unclear the extent to which counsel had worked in special education law).

### 4.   Attorney Flynn

Plaintiffs request a rate of $285 per hour for Attorney Flynn, who worked exclusively on the federal fee petition portion of this lawsuit.  (Pls.' Mot. 18).  In support of this hourly rate, Attorney Flynn avers that she has approximately eight years of litigation experience at the law firm of Drinker Biddle & Reath LPP, including six years of experience prosecuting or defending against petitions for attorneys' fees in a variety of contexts.  (Flynn Decl. ¶¶ 3-5).  As a senior associate at Drinker Biddle, Attorney Flynn declares that her regular billing rate is $440 per hour.  (Flynn Decl. ¶¶ 1, 8).  Plaintiffs also note that Attorney Flynn's hourly rate of $285 is within the $265 to $335 per hour range set forth in the 2014 CLS Fee Schedule for attorneys with six to ten years' experience.  (Pl.'s Mot. 17).

In response, Defendant argues that a reasonable hourly rate for Attorney Flynn is $225 per hour.  (Resp. 16).  According to Defendant, $225 is a reasonable hourly rate because it is at the lower end of the 2011 CLS Fee Schedule, and, with the exception of handling one fee case for PILCOP in 2014, Attorney Flynn has "no experience in special education law."  (*Id.*).

I find $285 per hour to be reasonable compensation for Attorney Flynn's work on the pending fee action.  First, her requested hourly rate is substantially lower than Attorney Flynn's regular billing rate of $440 per hour.  According to survey data published by the *National Law Journal* in 2013, a rate of $440 per hour is comparable to rates charged by senior associates in the Philadelphia legal market.   (Flynn Decl. ¶ 9).  Second, Attorney Flynn's requested hourly rate is well-within the range prescribed the 2014 CLS Fee Schedule for attorneys with her similar experience.  *See* M.M. & E.M., 2015 WL 6689855, at *6 (E.D. Pa. Nov. 3, 2015) (attorney with nine years' experience entitled to rate of $292 per 2014 CLS Fee Schedule).  The District emphasizes that Attorney Flynn has no significant experience in special education law, but

overlooks that her role in this matter was limited to litigating the federal fee petition.  Attorney

Flynn has substantial experience in fee matters.  According to her affidavit, and from this Court's

review, Attorney Flynn has been counsel of record on several fee petitions brought on behalf of

PILCOP in this Circuit, and has litigated one such case on appeal to the Third Circuit.  *See Pub.*

*Interest Law Ctr. of Philadelphia School District*, No. 14-815 (E.D. Pa. filed Feb. 6, 2014); *Pub.*

*Interest Law Ctr. of Philadelphia School District*, No. 12-4528 (E.D. Pa. filed Aug. 8, 2012);

*Pub. Interest Law Ctr. of Philadelphia v. Pocono Mountain Sch. Dist.*, No. 09-2326, 2011 WL

2746179 (M.D. Pa. July 12, 2011), *aff'd*, 491 F. App'x 316 (3d Cir. 2012).  Additionally,

Attorney Flynn has litigated fee petitions in other contexts.  (Flynn Aff. ¶ 5).  An hourly rate of

$285 is reasonable, as it is squarely within the range prescribed by the 2014 CLS Fee Schedule

for attorneys with similar experience and is substantially less than Attorney Flynn's regular

billing rate.

In light of the foregoing, I conclude that Attorney Kerr and Attorney Flynn are entitled to

their requested hourly rates of $600 and $285, respectively; however, I will reduce Attorney

Hinerfeld's hourly rate from $300 to $250 per hour.

## C.    Reasonableness of Hours Requested

Having determined the reasonable hourly rates, the Court turns to the amount of hours

reasonably expended on the litigation.  *See Interfaith Cmty. Org.*, 726 F.3d at 416 ("In addition

to determining the reasonable hourly rate, the court must examine the hours requested and

exclude those which were not reasonably expended.") (internal quotation omitted).

> Hours are not reasonably expended if they "are excessive,
> redundant, or otherwise unnecessary." A district court must reduce
> the hours requested by the number of hours spent litigating
> distinct, unsuccessful claims. *Dee v. Borough of Dunmore*, 548
> F.App'x 58, 64 (3d Cir. 2013) (citing *Hensley v. Eckerhart*, 461

U.S. 424, 434-35 (1983)). A district court may also deduct hours
that are inadequately documented. *See Dee*, 548 F.App'x at 64.

*E.C. and C.O.*, 91 F. Supp. 3d at 603-04.

In this case, Plaintiffs submitted time sheet compilations to support the number of
compensable hours.  Attorney Kerr requests 143.3 hours for time billed in the administrative
proceeding and 28.4 hours in Plaintiffs' federal action, (Kerr Decl. ¶¶ 28-31; Kerr Decl. Exs. 2-
3); Attorney Hinerfeld requests 372.7 hours for time billed in the administrative proceeding, and
40.6 hours in Plaintiffs' federal action, (Hinerfeld Decl. ¶¶ 13-18; Hinerfeld Decl. Ex. 1-2); and
Attorney Flynn requests 148.7 hours for time billed in the federal action, (Flynn Decl. ¶¶ 11-14;
Flynn Decl. Ex. 1).  Defendant objects to many of the hours listed on the grounds that they are
duplicative, excessive, vague or otherwise objectionable.  (Def.'s Resp. 17-44).  The Court
addresses Defendant's specific challenges to Plaintiffs' requested hours below.[14]

### 1.      Duplicative Time Billed in Administrative Proceedings

First, Defendant argues that all time spent, and all legal services furnished, were
unnecessarily duplicative and/or excessive because "there was no reason why the administrative
proceeding required two attorneys."  (Resp. 21).  According to Defendant, Attorney Kerr, a
specialist in the field of education disability law, should have been able to handle this matter
entirely on her own.  (*Id.*).

I will not reduce any requested hours on the basis of this general complaint.  "Objections
must be specific for the Court to reduce the hours requested." *Dooley v. City of Philadelphia*, No.

---

[14]   Absent specific objections, a court should not decrease the hours included in the
lodestar.  *See Rode*, 892 F.2d at 1183.  In reviewing Defendant's objections, the Court notes that
rather than providing substantive argument, Defendant reprinted excerpts of Plaintiffs' counsels'
timesheets as tables within its Response. (*See* Resp. 22-44).  Though these tables have helped
the Court identify the specific time entries to which the District objects, the Court relies on the
time sheets submitted by counsel, not the District's tables, as the best evidence of the hours
actually billed.

99-2764, 2002 WL 31053375, at *3 (E.D. Pa. Aug. 30, 2002) (citing *United States v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000)).  The District does not ask for any particular reduction in time, but rather objects to Plaintiffs' use of two attorneys in the administrative proceedings.  This objection does not provide sufficient notice to Plaintiffs of the portion of the fee petition which must be defended.  *See Rode*, 892 F.2d at 1183 (fee opponent "has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee").  Accordingly, I find this objection lacks the requisite specificity to reduce any hours requested by Plaintiffs.

### 2.   Excessive Time Preparing Due Process Complaint

Defendant next argues that Attorneys Kerr and Hinerfeld spent excessive time preparing and drafting the form due process complaint in the administrative proceedings, filed on May 14, 2013.  (Def.'s Resp. 22-23; Pls.' Br. Ex. B 18).  Prior to May 14, 2013, Attorney Kerr spent 1.4 hours meeting with Attorney Hinerfeld to review I.W.'s case; .4 hours meeting with Attorney Hinerfeld to review strategy; .2 hours reviewing email correspondence related to obtaining I.W.'s school records; and 3.7 hours reviewing drafts of the complaint prepared by Attorney Hinerfeld, for a total of 5.7 hours.  (Kerr Decl. Ex. 2 at 1).  Attorney Kerr also recorded .4 hours to file the due process complaint on May 15, 2013.  (*Id.*).  Attorney Hinerfeld's timesheets reflect that he spent a total of 26.5 hours reviewing I.W.'s case file and drafting the administrative complaint.  The bulk of his time, or approximately 23.1 hours, was spent meeting with Attorney Kerr; obtaining and reviewing I.W.'s speech and language evaluations, neuropsychological reports, IEPs, progress reports, and report cards; researching and reviewing literature pertaining to treatment of speech and language impairments; and reviewing pertinent case law.  (Hinerfeld

Decl. Ex. 1 at 1).  He also spent 3.4 hours drafting and revising the administrative complaint.

(*Id.*).

Defendant contends that Attorneys Kerr and Hinerfeld should have spent no more than

four hours each familiarizing themselves with the case and preparing the due process complaint.

(Def.'s Resp. 22-23).  In support of this argument, Defendant points out that Courts within this

Circuit have regularly reduced hours expended on the preparatory stages of an administrative

proceeding where the case is relatively straightforward, or because experienced counsel is

presumed to be able to quickly familiarize himself with underlying facts.  *See, e.g.*, *Melissa G. v.*

*Sch. Dist. of Philadelphia*, No. 06-5527, 2008 WL 160613, at *4 (E.D. Pa. Jan. 14, 2008) (25

hours reviewing case file and drafting due process complaint reduced by 8.6 hours "in light of

the nature of [the] case"); *Laura P. v. Haverford Sch. Dist.*, No. 07-5395, 2009 WL 1651286, at

*4 (E.D. Pa. June 12, 2009) (129.2 hours spent by attorney to prepare to file due process hearing

request reduced to 20 hours).  However, Plaintiffs respond that cases like *Melissa G.* and *Laura*

*P.* are inapposite because I.W.'s case was not straightforward; rather the hours expended by

Attorneys Kerr and Hinerfeld preparing and drafting the complaint were reasonable because

"I.W.'s placement issues were complex." (Pls.' Reply 6).

Considering the complexity of this case, I find the 5.7 hours spent by Attorney Kerr

meeting with co-counsel and reviewing the due process complaint to be reasonable.  However, I

will not compensate her for the .4 hours for "final review and filing of due process complaint,"

billed on May 15, 2013, the day after the due process complaint was filed.  *See Dee*, 548

F.App'x at 64 (time need not be awarded for inadequately documented hours).  With respect to

Attorney Hinerfeld, I agree that 23.1 hours preparing to file a form complaint is excessive, even

considering the complexity of I.W.'s case file.  Accordingly, a one-third reduction in the time

billed to preparing and drafting the form complaint is merited.  I will deduct 8 hours of preparatory time and 1.1 hours of drafting time from Attorney Hinerfeld's fee request.

### 3.    Excessive Time on Inter-firm Communication

Defendant next argues that Attorneys Kerr and Hinerfeld spent excessive time on inter-firm communications during the administrative proceedings.  (Resp. 23-26).  Defendant does not cite to any authority or provide any argument as to why the hours cited were excessive, but rather provides a table compiling the hours from Attorney Kerr and Attorney Hinerfeld's timesheets related to meetings, emails, and phone calls between counsel.  (*Id.*).  According to the District's calculation, Plaintiffs' counsel spent approximately 30.2 hours on such communication.  (*Id.* at 26).  Defendant argues that this number should be reduced to 20 hours.  (*Id.* at 26).

In response, Plaintiffs point out that according to the time sheets supplied by the District, defense counsel spent approximately 67.6 hours communicating with one another.[15]  (Pls.' Reply 6-7; Pls.' Reply Ex. A, ECF Nos. 37-1, 37-2).  Evidence of the hours expended by the non-prevailing party on the same task is relevant to the determination of whether the hours requested by the prevailing party are reasonable.  *See Coal. to Save Our Children v. State Bd. of Educ. of State of Delaware*, 143 F.R.D. 61, 64 (D. Del. 1992) (citing *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 587 (3d Cir. 1984)).

---

[15]  Defendants retained the law firm of Fox Rothschild to assist two School District attorneys in the defense of this case.  The timesheets from Fox Rothschild contains 205 instances of inter-firm communication.  (Pl.s' Reply Ex. A). Twenty-eight of those entries, reflecting a total of 9.2 hours, are solely for inter-firm communications (resulting in an average of .33 hours per communication).  Another 177 block-billed entries note inter-firm communications.  (*See id.*).  Applying the average from stand-alone inter-firm communications to the 177 block-billed entries, it can be estimated that Defendant spent approximately 58.41 of the block-billed hours on inter-firm communication, for a total of 67.61 hours.

In this case, I find it persuasive that Defendant's total number of hours spent on inter-firm communications more than doubles the hours spent by Plaintiffs' counsel on inter-firm communications. The hours spent by Plaintiffs' counsel on these same tasks are not unreasonable or excessive in light of the District's own billing. *See E.C. and C.O.*, 91 F. Supp. 3d at 609 (fact that counsel for the School District expended as many or more hours on the same tasks as plaintiffs' counsel "supports the reasonableness of the hours expended by counsel for Plaintiff Parents.").

### 4. Excessive and Duplicative Time Preparing for and Attending Due Process Hearings

Defendant next objects that Attorneys Kerr and Hinerfeld spent excessive and duplicative time preparing for and attending the due process hearings. (Resp. 26-31).

Considering first the time billed for attendance at the due process hearings, the record reflects that there were nine due process hearings held between August 2013 and January 2014.[16] (Pls.' Mot. Ex. A at 2, ECF No. 33-1). The hours recorded by Plaintiffs' counsel to attend these hearings are summarized below:

| Hearing Date | Attorney Kerr | Attorney Hinerfeld |
|---|---|---|
| August 26, 2013 | 8 | 0 |
| September 25, 2013 | 0 | 9.2 |
| October 9, 2013 | 6.5 | 7.4 |
| November 12, 2013 | 2 | 9.7 |
| November 13, 2013 | 7 | 0 |
| November 25, 2013 | 7.5 | 9.5 |
| December 15, 2013 | 0 | 7.5 |
| January 6, 2014 | 5 | 6 |
| January 28, 2014 | 0 | 7.2 |

---

[16] I do not include in this analysis the hearing held on May 29, 2013, which related solely to memorializing the parties' settlement on the ESY issue. (*See* Pls.' Br. 6). Prior to the parties' settlement on this issue, Attorney Hinerfeld recorded 20.2 hours preparing for this hearing. (Hinerfeld Decl. Ex. 1 at 1-2). I find this time expenditure to be reasonable in light of the communication required to reach and memorialize the settlement agreement.

In total, Attorney Kerr recorded 36 hours for attending the due process hearings, and Attorney Hinerfeld recorded 56.5 hours.  The District argues that these hours are duplicative, since both attorneys were not necessary at the October 9, November 12, November 25, and January 6 hearings.  (Resp. 27).

Reductions for duplicative hours may be made "if the attorneys are *unreasonably* doing the same work."  *Rode*, 892 F.2d at 1187 (emphasis in original) (internal citation and quotation omitted); *Elizabeth S.*, 2012 WL 2469547, at *3 (citing *Herkalo v. Nat'l Liberty Corp.*, No. 94–7660, 1997 WL 539754, at *5 (E.D. Pa. Aug.7, 1997) (finding that it was unreasonable to award attorneys' fees for the duplicative services of two attorneys working on the same case "where one attorney's time and efforts would have sufficed")).  In this case, Plaintiffs argue that it was not unreasonable for both Attorney Kerr and Attorney Hinerfeld to be present at certain due process hearings because they were responsible for different witnesses.  (Pls.' Mot. 20-21).  Specifically, Attorney Kerr attended five and one half days of hearings because, due to her previous experience in dyslexia cases, she was responsible for examining the school staff and the speech/language pathologist.  (*Id.* ¶ 23; Pls.' Mot. 20).  Attorney Hinerfeld explains that as second-chair counsel, he generated the initial drafts of documents and conducted legal research. (Hinerfeld Aff. ¶ 13).

Plaintiffs' explanation as to the division of labor between Attorneys Kerr and Hinerfeld does not clarify for this Court why counsel was able to divide attendance with no or only minimal overlap on certain hearing dates, while on other days, counsel overlapped for all or the majority of the day.  Plaintiffs have not met their burden of establishing the reasonableness of both attorneys' attendance on September 25, November 12, November 25, and December 15, 2013.  I find a reduction in hours for those dates to be appropriate to account for unnecessary

duplication of effort.  *See Damian J.*, 2008 WL 1815302, at *4 (deducting duplicative hours for two attorneys to attend a scheduling conference and depositions).  Therefore, I will reduce by half the 19 hours billed by Attorney Kerr, and the 22.9 hours billed by Attorney Hinerfeld, to attend the above hearings.[17]  I find the rest of the hours billed by counsel for their attendance at the due process hearings in this case to be reasonable.

The School District also contends that Attorneys Kerr and Hinerfeld spent excessive time preparing for the due process hearings.  According to the District's review of counsels' time sheets, Attorney Kerr spent 25.9 hours and Attorney Hinerfeld 152.3 hours preparing for the due process hearings.  (Resp. 26-32).  In support of its claim that these hours are excessive, the School District refers to *Elizabeth S. v. Sch. Dist. of Philadelphia*, No. 11–1570, 2012 WL 2469547 (E.D.Pa. June 28, 2012).  (Resp. 27).  In that case, the Court noted that "preparation time for a hearing should be considered relative to the length of the hearing itself."  *Id.* at *3 (citing *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 491 (D.N.J. 1998) (excessive to award fees for preparation time that amounted to three times the length of the hearing)).  Because the hearings in *Elizabeth S.* lasted approximately twenty hours, the Court permitted reimbursement for only forty hours of a senior attorney's preparation time, excluding hours spent on the closing statement.  *Id.*

After independent review of the time entries, this Court concludes that Attorney Kerr spent 32.7 hours on tasks relating to preparation for the due process hearings, and Attorney

---

[17]  The Court notes that Attorney Hinerfeld's entries for the September 25, November 12, November 25, and December 15 hearings are block entries that include both his time to prepare and his time to attend the hearings.  Because the time to prepare has been grouped with the time to attend that this Court has deemed duplicative, they are subject to the same reduction.

Hinerfeld recorded 130.4 hours.[18]  Counsels' time attributable to preparation is broken down by

hearing date as follows:

| Hearing Date | Hours by Attorney Kerr | Hours by Attorney Hinerfeld |
|---|---|---|
| August 26, 2013 | 11.2 | 55.6 |
| September 25, 2013 | 2.6 | 13.7 |
| October 9, 2013 | 2.3 | 4.5 |
| November 12, 2013 | 1 | 3 |
| November 13, 2013 | 1.2 | .7 |
| November 25, 2013 | 9.5 | 12.5 |
| December 15, 2013 | 2 | 16.8 |
| January 6, 2014 | 0 | 2.8 |
| January 28, 2014 | 2.9 | 20.8 |

I find Attorney Kerr's hours expended preparing for the due process hearings to be

largely reasonable.  Overall, she recorded 32.7 hours of time preparing for 28.1 hours of

hearings.  Even accounting for the fact that a 9.5 hour reduction is required for duplicative

attendance at certain hearing with Attorney Hinerfeld, Attorney Kerr's preparation time is well

within the 2:1 ratio suggested in *Elizabeth S.* for experienced attorneys.  Further, I note that the

bulk of her preparation time was frontloaded before the first hearing, and her preparation time for

other hearings was minimal.  The only outlier is the 9.5 hours Attorney Kerr billed to prepare for

the November 25 hearing, but her billing sheets reflect that 4.4 hours of that time was spent

preparing Plaintiffs' expert to testify; 2.2 hours was spent preparing questions for I.W.'s special

education teachers, and 1.5 hours was spent reviewing prior testimony.  (Kerr Decl. Ex. 2 at 14-

---

[18]  I have carefully reviewed the District's submissions as the well the time sheets, and find that not all hours included by the District are attributable to preparation for the due process hearings.  For example, I have not included any hours relating to the ESY settlement in my analysis of Attorney Hinerfeld's hours spent preparing for the due process hearings, as the ESY issue was addressed separately.  *See* Note 16 *supra*.  I have also omitted certain hours included by the District that were, in this Court's opinion, not directly related to preparing for the due process hearings, such as hours recorded by Attorney Hinerfeld related to routine tasks such as scheduling, and hours recorded by Attorney Kerr regarding I.W.'s suspension from school during the pendency of the administrative proceedings.

15).  I find this preparation time to be reasonable in light of Attorney Kerr's responsibility for the witnesses testifying as to I.W.'s speech and language impairments.  (Kerr Decl. ¶ 23).

I also conclude that the 130.4 hours Attorney Hinerfeld billed preparing for the due process hearings is not excessive.  As an initial matter, the 2:1 ratio of preparation time to hearing length set forth in *Elizabeth S.* does not apply to Attorney Hinerfeld, as he was not experienced in special education litigation during the due process proceedings.  *See M.M. & E.M.,* 2015 WL 6689855, at *7 (explaining that 2:1 ratio set forth in *Elizabeth S.* is limited to experienced counsel) (*citing E.C and C.O.*, 91 F. Supp. 3d at 608-09).  Instead, in considering whether preparation time billed by an inexperienced attorney is reasonable, Courts within this Circuit consider the number of due process hearings and the time elapsing between them; the complexity of the case; and how hours are allocated between hearings.  In *E.C and C.O.*, the Court found it reasonable that junior counsel billed 67 hours preparing for the first hearing day, 28 for the second hearing day, and 12 hours for the third day.[19]  *E.C. and C.O.*, 91 F. Supp. 3d at 608-09.  Citing *E.C. and C.O.* with approval, the Court in *M.M. & E.M.* found it was reasonable for that same attorney to bill 119 hours preparing for six days of due process hearings.  2015 WL 6689855, at *7.

---

[19]  The Court in *E.C. and C.O.* explained that 67 hours of preparation time was reasonable for a junior attorney to prepare for the initial due process hearing because nearly three months elapsed between the filing of the due process complaint and the first hearing day, during which time counsel "expended a significant number of hours on activities that would have necessarily been required to fulfill her responsibilities to her clients, including communicating with Plaintiff Parents, their experts, defense counsel, and the hearing officer."  *Id.* at 608 (citing *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, No. 2001–155, 2004 WL 3037953, at *4 (D.Vi. Dec. 31, 2004) (discussing the ethical duties of communication and finding no evidence that the hours expended on communicating with the plaintiff, co-counsel, and plaintiff's experts were unreasonable)).  The Court likewise found 28 hours to be reasonable to prepare for the second hearing because more than two months elapsed between the first and second hearing, during which time it was necessary that junior counsel review the file and prepare witnesses.  *Id.* at 609.  The twelve hours junior counsel billed preparing for the third hearing was reasonable in light of the nine-day interim period between the second and third hearing days.  *Id.*

In light of this precedent, I find it reasonable that Attorney Hinerfeld billed 130.4 hours to prepare for nine due process hearings, held over a period nine months.  *See* R.*C. v. Bordentown Regional Sch. Dist. Bd of Educ.*, 2006 WL 2828418, at *3 (D.N.J. Sept. 29, 2006) (time spent preparing for hearing should be considered relative to length of hearing).  As with Attorney Kerr, the bulk of Attorney Hinerfeld's preparatory hours occurred before the first hearing.  The hours billed in June, July, and August 2013 reflect that Attorney Hinerfeld was responsible for identifying and contacting witnesses; conducting legal research and drafting substantive responses to the District's motions, including a motion *in limine* to limit claims; managing document production and performing document review; preparing hearing exhibits; drafting outlines for witness examination; and handling scheduling and logistics.  (Hinerfeld Decl. Ex. 1 at 2-4).  Having reviewed the rest of his time sheets, I do not find the hours he expended preparing for any other due process hearing to be unreasonable or excessive.

Therefore, I will reduce Attorney Kerr's hours spent attending the due process hearings by 9.5 hours, and Attorney Hinerfeld's by 11.45 hours.  However, considering the duration of the hearings, the number of witnesses whom counsel examined, the number of exhibits produced, and the complexity of the myriad issues addressed therein, I decline to reduce the fee for the time spent preparing for the hearings.

### 5.    Excessive time spent on post-hearing brief

The District further contends that the 115 hours Plaintiffs' counsel spent preparing the post-hearing brief was excessive.[20]  (Resp. 32-33).  The District argues that "[e]xperience [sic] counsel such as Ms. Kerr and Mr. Hinerfeld should have been able to review the transcripts and

---

[20]  Plaintiffs do not contest the District's determination that counsel spent a combined 115.6 hours drafting and revising the post-hearing brief.  (Pl.s' Reply 7).  I have independently reviewed the time sheets and find that Attorney Kerr spent 31 hours, and Attorney Hinerfeld 84.6 hours, on the post-hearing briefing.

prepare and edit a post-hearing brief in no more than 40 hours — 30 hours for Mr. Hinerfeld and

10 hours for Ms. Kerr to review the brief." (Resp. 33; Pls.' Reply 7). Plaintiffs respond that

Attorneys Kerr and Hinerfeld reasonably spent 115 hours reviewing and incorporating more than

2,000 pages of testimony and hundreds exhibits to draft the post-hearing brief. (Reply 7).

Plaintiffs further note that according to the District's billing, counsel for the Defendant billed

72.6 hours on post-hearing briefing. (*Id.*). They contend that this speaks to the reasonableness

of the hours billed by Attorneys Kerr and Hinerfeld, since Plaintiffs bore the burden of proof.

(*Id.* at 7-8).

Considering these arguments, I find 115 hours on the post-hearing briefing to be

excessive; however, I do not accept Defendant's conclusory argument that counsel for Plaintiffs

"should have" been able to complete the post-hearing briefing in 40 hours when defense counsel

spent nearly double that. Given the complexity of the case and the fact that Plaintiffs' bore the

burden of proof, I find it reasonable to expect that Plaintiffs could have completed this task in 95

hours. I will deduct 20.6 hours for the post-hearing briefing. Consistent with the division of

labor between counsel on this task, in which three-quarters of the total time spent preparing the

post-hearing brief was attributable to Attorney Hinerfeld, I will deduct 13.35 hours from

Attorney Hinerfeld and 6.65 hours from Attorney Kerr.

### 6.    Excessive time spent on retaliation brief

Defendant next contends that any time related to Plaintiffs' filing of a retaliation claim

against the District and Main Line Academy pursuant to Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794, should be deducted from any fee award. (Resp. 34-35). Plaintiffs

respond that they proactively removed these hours prior to filing the instant motions for fees and

costs. (Reply 8). Having reviewed the timesheets, I find that Plaintiffs have largely removed the

contested hours; however, Attorney Hinerfeld's time sheet includes two entries related to the retaliation claim: .2 hours emailing with Attorney Kerr and others re: I.W.'s suspension and request for manifestation review on October 28, 2013, and .2 hours emailing Attorney Kerr regarding a Stay Put motion.  (Hinerfeld Decl. Ex. 1 at 6).  Accordingly, I will deduct .4 hours from Attorney Hinerfeld's fee request.

### 7.    Excessive time on all aspects of the federal litigation

Lastly, the District contends that counsel for Plaintiffs billed an excessive amount of time on the instant federal civil action.  (Resp. 35-42).

First, the District argues that Plaintiffs' counsel expended an unreasonable amount of time preparing and filing the federal complaint in this civil action.  The complaint at issue was filed June 3, 2015 and consisted of 4 pages.  (Compl., ECF No. 1).  Plaintiffs also attached a Memorandum of Law in support of their complaint, (*id.* at 13-26), and exhibits including billing slips for Attorneys Kerr and Hinerfeld, (Compl. Ex. 1, ECF No. 1-1).  According to the time sheets submitted by counsel, Attorney Hinerfeld spent 14.3 hours drafting, revising and finalizing the complaint and memorandum of law, and compiling exhibits and affidavits in support.  (Hinerfeld Decl. Ex. 2 at 1, ECF No. 33-11).  Attorney Kerr spent 3.4 hours reviewing and finalizing the complaint and accompanying affidavits.[21]  (Kerr Decl. Ex. 3 at 1-2).

---

[21]  Attorney Kerr's time sheet also reflects that she spent 4.5 hours reviewing time slips in April 2014, for which she billed $100 per hour.  (Kerr Decl. Ex. 3 at 1).  This work was performed by Attorney Kerr in connection with Plaintiffs' initial fee request following the Hearing Officer's decision, prior to the filing of the federal complaint.  To the extent the District challenges these hours in their general argument as to the reasonableness of the hours expended in the federal action, I find Attorney Kerr reasonably billed this time and did so at an appropriate rate.  Paralegal work, if performed by an attorney, can be billed only at paralegal rates, while purely secretarial work is not compensable because it is subsumed in overhead and built into the attorney's fee for services.  *See generally Missouri v. Jenkins*, 491 U.S. 274 (1989).  The services for which compensation is claimed — review of fee slips — is similar to the type of work

The District argues Plaintiffs' counsel pled "a lot of evidence, statutory and regulatory background and are [sic] unnecessary 'Memorandum of Law in Support of the Complaint' with affidavits." (Resp. 35). Instead, Defendant submits that Plaintiffs could have pled a sufficient federal complaint for attorneys' fees stemming from the administrative hearing in ten numbered paragraphs, and that it should have taken Attorney Kerr alone no more than four hours to do so. (*Id.* at 36). The School District fails to cite any case law in support of this argument. Plaintiffs generally reply that their time expended in the federal litigation was reasonable because the District unnecessarily prolonged the litigation by propounding discovery and demanding trial de novo; however, they do not set forth any argument specific to the reasonableness of the time spent drafting the complaint and memorandum of law.

I agree with Defendant that twenty hours is excessive for Plaintiffs to prepare and file a simple complaint to collect fees. *See E.C. and C.O.*, 91 F. Supp. 3d at 610 (three hours reasonable to prepare and file federal fee petition) (citing *Neena S. ex rel. Robert S. v. Sch. Dist. of Philadelphia*, No. 05–5404, 2009 WL 2245066, at *9 (E.D. Pa. July 27, 2009) (reducing 29.31 hours spent drafting 18-page complaint to 15 hours)); *Tobin v. Gordon*, 614 F. Supp. 2d 514, 524 (D. Del. 2009) (finding 25.6 hours for a complaint and minimally altered amended complaint to be unreasonable, and reducing to 10 hours); *cf. Arc of New Jersey, Inc. v. Twp. of Voorhees*, 986 F. Supp. 261, 269 (D.N.J. 1997) (upholding 16.3 hours drafting federal complaint in disability rights case challenging city ordinance with twenty-six provisions which raised "major civil rights issue at the state and federal levels."). Considering that the Complaint in this action raised no novel or complex issues, I find that Attorney Hinerfeld should have spent no more than 5 hours drafting the complaint and accompanying materials, and Attorney Kerr no more than 1 hour

---

typically performed by paralegals, and $100 is a reasonable hourly rate for paralegal work. Accordingly, I will not adjust this portion of Attorney Kerr's fee request.

reviewing and finalizing them.  Therefore, I will reduce Attorney Hinerfeld's fee request by 9.3 hours, and Attorney Kerr's by 2.4 hours.

The School District also argues that counsel spent an excessive amount of time preparing their initial Motion for Attorney's Fees, filed on October 29, 2014, after the arbitration panel entered judgment in Plaintiff's favor.  (Resp. 36).  Attorney Hinerfeld billed .2 hours, (Hinerfeld Decl. Ex. 2 at 2); Attorney Kerr billed 1.3 hours, (Kerr Decl. Ex. 3 at 4); and Attorney Flynn billed 16.8 hours, (Flynn Decl. Ex. 3 at 4), related to this motion.  The District argues that all of these hours were unreasonable and excessive because the October 2014 motion for fees was filed before final judgment was entered and before the deadline for Defendant to demand trial *de novo*, and therefore was not authorized by Rule 54(d)(2).  (*Id.*).  Plaintiffs respond that the time expended on the motion was appropriate, as they filed it fourteen days after the arbitration award, consistent with the deadline set forth in Federal Rule of Civil Procedure 54.[22]  (Pls.' Reply 8 n.5).

Both parties are incorrect in assuming that Rule 54 applies to Plaintiffs' fee motion. Under Federal Rule of Civil Procedure 54(d)(2), a claim for attorney's fees and related nontaxable expenses must be made by motion  no later than 14 days after the entry of judgment "unless a statute or court order provides otherwise."  *Id.* 54(d)(2)(B).  However, Rule 54(d) "presupposes that a final judgment is entered by a court and that a post-judgment request for fees and cost is ancillary to that judgment and not a separate cause of action."  *Brandon E. v. Dep't of Educ.*, 621 F. Supp. 2d 1013, 1018 (D. Haw. 2008) (quoting *J.Y. v. Seattle Sch. Dis't No. 1*, No. C07–1126–JCC, 2007 WL 4111202, *2 (Nov. 16, 2007)); *see also J.B. v. Essex–Caledonia*

---

[22]  Plaintiffs cite to Federal Rule of Civil Procedure 56, which pertains to motions for summary judgment.  (Pls.' Reply 8 n.5).  The Court surmises that Plaintiffs intended to refer to the 14-day filing period set forth in Rule 54, which addresses motions for attorneys' and costs.

*Supervisory Union*, 943 F. Supp. 387, 390 (D.Vt. 1996).  The IDEIA sets forth a separate cause

of action for a party prevailing at the administrative level to recover attorneys' fees in federal

court.  *See* 20 U.S.C. § 1415(i)(3); *Bethlehem Area Sch. Dist. v. Zhou*, No. 09-03493, 2012 WL

935859, at *3, *3 n.1 (E.D. Pa. Mar. 20, 2012) (citing *Davidson v. District of Columbia*, 736 F.

Supp. 2d 115, 123–124 (D.D.C. 2010) (" . . . IDEA fee litigation [is] separate and distinct from,

rather than merely ancillary to, substantive IDEA litigation challenging an administrative

[hearing officer determination].")).  Thus, Rule 54 does not apply to IDEIA fee litigation brought

under the fee shifting provision of the statute.[23]  *See Brandon E.*, 621 F. Supp. 2d at 1018.

In this case, Plaintiffs were prevailing parties in the administrative proceedings and

brought this action solely to recover attorneys' fees and costs under 20 U.S.C. §1415(i)(3).

(Compl. ¶ 2).  Accordingly, their motion for attorneys' fees and costs arises from that cause of

action, and the District's argument that the hours billed to the October 2014 fee motion were all

excessive because the motion was premature under Federal Rule 54 is unpersuasive.  Having

independently reviewed the time sheets, I find the hours billed by Attorneys Flynn, Kerr, and

Hinerfeld relating to the October 2014 fee petition to be reasonable.

Lastly, the District asserts that the time spent by counsel on the instant motion for

attorneys' fees, filed in August 2015, should be reduced.  (Resp. 36).  According to the billing

sheets submitted by counsel, Attorney Kerr billed 5.8 hours related to the pending motion, (Kerr

---

[23]  Separately, the IDEIA states that a "party aggrieved" by a due process hearing
decision may bring a civil action to substantively challenge that decision within ninety days from
the date of the decision.  20 U.S.C, § 1415(i)(2)(A)-(B).  If the aggrieved party prevails in the
federal litigation challenging the substance of the administrative decision, the correct procedure
for obtaining an award of fees and costs is provided under Rule 54(d).  *See J.M. v. Wall Twp. Bd.
of Educ.*, No. 13-CV-4505, 2014 WL 4758068, at *3 (D.N.J. Sept. 24, 2014); *A.F. v. Hamamoto*,
No. 07-00278, 2007 WL 2684133, at *3 (D. Haw. Sept. 7, 2007).  This case was not brought by
an aggrieved party to challenge the substance of a hearing officer's decision, but rather by a
prevailing party solely to recover fees and costs.

Decl. Ex. 3 at 4-5); Attorney Hinerfeld billed 5.2 hours (Hinerfeld Decl. Ex. 2 at 2); and Attorney Flynn billed 26.9 hours (Flynn Decl. Ex. 3 at 7).  Plaintiffs have not responded with any argument as to why the hours devoted to the August 2015 fee petition were reasonable.

I agree with Defendant that these hours are excessive.  With the exception of updating the hours requested to incorporate time billed to this matter between October 2014 and August 2015, and perhaps conducting brief research to ensure no intervening changes in controlling law, the majority of work performed on the October 2014 fee petition was or should have been transferable to the August 2015 fee petition.  I find it reasonable to afford Attorney Kerr 2 hours for updating her affidavit, communicating with co-counsel, and reviewing the August 2015 fee petition, and will reduce her request by 3.8 hours.  I will award Attorney Hinerfeld 1 hour for performing research and updating his declaration, and will reduce his request by 4.2 hours.  In light of her previous work, I find 5 hours reasonable for Attorney Flynn to have drafted and revised the August 2015 fee petition, and will accordingly deduct 21.9 hours from her fee request.[24]

Having considered the reasonable hourly rate and reasonable fees for Plaintiffs' counsel in this action, and taking into account the adjustments set forth above, the Court finds the lodestar in this case to be:

---

[24]  Without any supporting argument, the District argues in the conclusion section of its briefing that the Court should reduce Attorney Hinerfeld's fee request by a further 20.6 hours for time participating in a status conference with the court, and preparing for and attending the arbitration hearing as witness.  (Resp. 49).  I decline to make the requested adjustment due to Defendant's failure to develop this argument.

| Attorney | Total Hours Claimed | Adjustments | Total Compensable Hours | Rate | Amount |
|---|---|---|---|---|---|
| Attorney Kerr | 167.2 | -.4<br>-9.5<br>-6.65<br>-2.4<br>-3.8 | 144.45 | $600 | $86,670 |
| | 4.5 | 0 | 4.5 | $100 | $450 |
| Attorney Hinerfeld | 413 | -8<br>-1.1<br>-11.45<br>-13.35<br>-.4<br>-9.3<br>-4.2 | 365.2 | $250 | $91,300 |
| Attorney Flynn | 148.7 | -21.9 | 126.8 | $285 | $36,138 |
| **TOTAL FEES:** | | | | | **$214,558** |

### D.    Lodestar Reduction

Once the lodestar is calculated, the court may in its discretion adjust the fee award downward "if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37). "This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id*

In this case, the District seeks a lodestar reduction of 70% to reflect that Plaintiffs prevailed on only two of the seven claims raised in the due process hearings. (Def.'s Resp. 45-47). Plaintiffs respond the mathematical reduction proposed by the District has been rejected by the Supreme Court, and that the correct way to compute a reasonable lodestar is to look to the ultimate results obtained. (Pls.' Reply 9-10). Under this rubric, they contend that that no reduction is warranted because all seven claims raised in the due process proceedings were interrelated, non-frivolous, and brought in good faith, and Plaintiffs' obtained significant relief.

40

(Pls.' Mot. 25; Pls.' Reply 9-10).  Plaintiffs further assert that any lodestar reduction should be imposed against Attorneys Kerr and Hinerfeld exclusively, since they were the only counsel in the administrative proceedings.  (Pls.' Reply 10).

The Third Circuit has repeatedly rejected the Defendant's approach to reducing attorney fees for non-meritorious claims, stating that "mathematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic.'"  *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009) (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 363 (3d Cir. 1990)); *see also Damian J. v. School District of Philadelphia*, 258 F. App'x. 333 (3d Cir. 2009) (affirming trial court's rejection of School District's request to reduce lodestar by 75% to reflect the fact that plaintiff prevailed on only one of four claims).  Rather, where the successful and unsuccessful claims "involve a common core of facts[,]" the lawsuit "cannot be viewed as a series of discrete claims" and the district court should instead "focus on the significance of the overall relief obtained[.]"  *Hensley*, 461 U.S. at 435; *see also Orson, Inc. v. Miramax Film, Corp.*, 14 F. Supp. 2d 721, 727 (E.D. Pa. 1998) (where many of the time entries reflect time spent on interrelated claims, *Hensley* directs the Court to focus on the level of success achieved by plaintiff).

My review of the administrative decision reveals that the unsuccessful claims were factually and legally related to the claims on which Plaintiff did prevail.  The claim that the District failed to accommodate I.W.'s mother, N.W., in IEP meetings, is the most factually distinct, but is not wholly unrelated because it still involves the District's compliance with the IDEIA in planning and executing I.W.'s educational programming and accommodations.  In light of the interrelated nature of the claims, it is impossible to determine with mathematical precision the time expended on a claim-by-claim basis.  Accordingly, the District's argument

that the Court should reduce fees by 70% because Plaintiffs prevailed on only two of seven claims in the due process hearings is not persuasive.  Rather, the Court must focus on reducing the fees awarded to a reasonable amount in relation to the results obtained.  *See Henlsley*, 461 U.S. at 440; *Inst. Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 919 (3d Cir. 1985).

Based upon my familiarity with and understanding of this litigation, I find a thirty percent reduction in the lodestar to be appropriate.  When comparing the relief sough to the relief obtained, it bears emphasizing that Plaintiffs' counsel achieved significant success for their clients in this matter.  They obtained 1,300 hours of compensatory education, reimbursement for an IEE, and an order requiring the District to perform another evaluation and to provide remedial, intensive programming for I.W. consistent with the Orton-Gillingham principles for the remainder of I.W.'s IDEIA eligibility.  The Hearing Officer also found that Main Line Academy was not appropriate to meet I.W.'s needs, and that the District should have proactively addressed this issue.  However, Plaintiffs did not obtain any relief related to extracurricular activities, compliance with the *LeGare* consent decree, or the provision of transition services.  The Supreme Court has explained, that "[f]ee-shifting to recompense . . . a plaintiff . . . is not all-or-nothing."  *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2216 (2011).  The "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Id*.  Accordingly, I will reduce the lodestar by thirty percent, an amount that fairly reflects the degree of success obtained by Plaintiffs' counsel in those proceedings.

Plaintiffs also argue that any reduction for partial success should apply exclusively to the time attributable to the administrative hearing, rather than the time litigating the federal fee petition.  (Pls.' Reply 10).  In general, attorneys' fees accrued for fee petition work are treated

separately from fees accrued for work on the merits.  *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985).  Consequently, the fee petition litigation must be considered "a separate entity subject to lodestar and *Hensley* reduction analysis."  *Id*; *see also Maldonado v. Houston*, 256 F.3d 181, 188 (3d Cir.2001) (granting all attorneys' fees for hours reasonably expended on litigation but reducing by 50% attorneys' fees reasonably expended on fee petition based on the limited success of the fee petition litigation).  However, in "ordinary circumstances some reduction [of fees that accrued in fee petition litigation] is appropriate" when there is a reduction based on limited success in the underlying action, though the reductions need not be the same.  *S.M. ex rel. G.M. v. Sch. Dist. of Upper Dublin*, No. 10-4038, 2012 WL 2953727, at *5 (E.D. Pa. July 20, 2012) (quoting *Durrett v. Cohen*, 790 F.2d 360, 363 (3d Cir. 1986)).  In this case I find a thirty percent lodestar reduction for the fees that accrued in the federal litigation to also be appropriate.  Plaintiffs were not entitled to all of the hours charged in the federal proceedings, and therefore were not entirely successful in the federal fee litigation.

Consequently, the lodestar in this case is reduced to $150,190.60.  Attorney Kerr is awarded $60,984 in fees; Attorney Hinerfeld is awarded $63,910; and Attorney Flynn is awarded $25,296.60.


**IV.   COSTS**

Plaintiffs also request $105.10 in costs for printing and copying documents used in the administrative proceeding, and $400 in filing fees.  (Pls.' Mot. 25-30).  The District does not object to the filing fees, but contends that the copying costs should be disallowed as general

overhead, which is included in the awarded hourly rate, and because copying costs are not authorized by the 28 U.S.C. § 1920.[25]  (Resp. 47).

Section 1920 specifically authorizes reimbursement for copying costs.  28 U.S.C. § 1920(4) (permitting courts to tax as costs "the costs of making copies of any materials where the copies are necessarily obtained for use in the case").  The party seeking reimbursement for copying costs must describe the purpose of the charge with sufficient specificity.  *E.C.*, 91 F. Supp. 3d at 616 (citing *Laura P.*, 2009 WL 1651286, at *9 (reimbursing costs for "copies for hearing," "copies of research for hearing," "copies for reply brief," and "copies of exhibits," but not for unexplained copying costs)).  Further, in this Circuit, copying costs are also recoverable "when it is the custom of attorneys in the local community to bill their clients separately for them.'"  *Id.* (quoting *Disciullo v. D'Amrosio Dodge, Inc*., No. 06–1775, 2008 WL 4287319, at *7 (E.D. Pa. Sept. 18, 2008)).  At least one court has held that copying costs "are typically charged to a fee-paying client."  *Id.* (quoting *Marthers v. Gonzales*, No. 05–3778, 2008 WL 3539961, at *4 (E.D.Pa. Aug. 13, 2008)).   "[T]he fee applicant has the burden of adequately documenting and itemizing the costs requested."  *Id.* at 616-17 (citing *Hall v. Harleysville Ins*., 943 F. Supp. 536, 546 (E.D. Pa.1996)) (denying reimbursement for "photocopying expense" because the description of the cost was not sufficiently definite).

In this case, Plaintiffs contend only that copying costs were for "documents necessary for use in the case."  (Kerr Decl. ¶ 29).  Without more information regarding the necessity or purpose of these copying costs, such costs are not reimbursable either as part of the attorney's fee award or as taxable costs under Section 1920.  Therefore, I will not award $105.10 in copying costs.

---

[25]  The District mistakenly contends that Plaintiffs request $661.13 in copying costs.

**V.**     **CONCLUSION**

Plaintiffs' Motion for Attorney's Fees and Costs is granted in part.  This Court awards

$400 in costs and $150,190.60 in fees, disbursed as follows:

| Attorney | Hours Reasonably Expended | Reasonable Hourly Rate | Total | Total after Lodestar Adjustment |
|---|---|---|---|---|
| Attorney Kerr | 144.45 | $600 | $86,670 | $60,669 |
| | 4.5 | $100 | $450 | $315 |
| Attorney Hinerfeld | 365.2 | $250 | $91,300 | $63,910 |
| Attorney Flynn | 126.8 | $285 | $36,138 | $25,296.60 |
| **TOTAL FEES:** | | | | **$150,190.60** |

**BY THE COURT:**


   /s/ Lynne A. Sitarski
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**

45